UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

    FREDERICK E. JAYNES,                     Chapter 7
                                                          Case No. 19-60700

                                   *Debtor.*

APPEARANCES:

Selbach Law Firm, PLLC                            *James F. Selbach, Esq.*
*Counsel for Debtor*
250 South Clinton Street
Suite 203
Syracuse, New York 13202

Office of the Attorney General                   *Letitia James, Esq.*
*Counsel for New York State Department of*     *Norman P. Fivel, Esq.*
*Taxation and Finance*
The Capitol
Albany, New York 12224-0341

Honorable Diane Davis, United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

I.      Introduction

The contested matter before the Court is a motion by Debtor Frederick E. Jaynes ("Debtor") against the New York State Department of Taxation and Finance ("DTF") filed on January 29, 2020 (the "Motion," ECF No. 14), wherein Debtor seeks sanctions against DTF pursuant to 11 U.S.C. § 105(a) for civil contempt for an alleged violation of the discharge injunction provided by 11 U.S.C. § 524.[1] DTF filed opposition to the Motion on April 24, 2020 (the "Opposition," ECF No. 21), asserting that DTF did not violate the discharge injunction and, in the alternative, if its acts do constitute a violation, sanctions are not warranted.

---

[1] Unless otherwise indicated, all chapter and section references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (2020) (The "Bankruptcy Code").

The Court first heard the Motion at its regularly scheduled Utica motion term calendar on March 10, 2020, and continued the hearing until April 14, 2020. However, due to the onset of the Covid-19 pandemic, this matter was continued by the Court at its regularly scheduled Utica motion term calendar on May 12, 2020, June 16, 2020, and July 14, 2020. The Court heard the Motion again on its regularly scheduled Utica motion term calendar on August 11, 2020. It was continued to September 15, 2020, at which time the parties were directed to submit briefs. DTF submitted its brief on September 24, 2020 (the "Brief," ECF No. 26). Debtor did not submit a brief. The Court took the Motion under advisement on September 29, 2020.

Based upon the record, oral argument, and the parties' submissions, the Court makes the following findings of fact and conclusions of law in accordance with Federal Rules of Bankruptcy Procedure 7052 and 9014.

    II.    Jurisdiction

The Court has jurisdiction over the parties and subject matter of this core proceeding pursuant to 28 U.S.C. §§ 1334 and 157(a), (b)(1), and (b)(2)(I).

    III.    Facts

The facts in this case are undisputed and relatively straightforward. The following facts are derived from the parties' submissions, oral arguments, and the Court's docket.

Debtor filed a voluntary petition for bankruptcy protection under Chapter 7 of the Bankruptcy Code on May 15, 2019. (ECF No. 1.) On his Schedule E/F, titled "Creditors Who Have Unsecured Claims," Debtor listed DTF as a priority unsecured creditor with two claims described as "2015 cigarette taxes," in the amounts of $643.00 and $490,442.91, respectively. On August 19, 2019, this Court entered an Order Discharging Debtor (the "Discharge Order," ECF No. 9). DTF was electronically served with the Discharge Order on the same date, as set forth in the Bankruptcy Noticing Center's Certification of Notice filed on August 21, 2019. (ECF No. 10.)

IV. Arguments

On January 20, 2020, Debtor filed an ex-parte motion to reopen his case (ECF No. 12), which the Court granted by Order issued January 27, 2020 (ECF No. 13). Debtor then filed the current Motion pursuant to § 524, wherein Debtor contends that the debts previously owed to DTF by Debtor were excise taxes from a transaction that occurred more than three years ago, and as such the debts were discharged "pursuant to 11 U.S.C. §507(a)(8)(E)(ii)." Accordingly, Debtor argues that DTF's attempt to collect on these debts violates the discharge injunction. (Mot. at 1.) In support of the Motion, Debtor attached the above-mentioned Certification of Notice (Mot., Ex. A.), and correspondence from DTF attempting to collect $490,324.89 (Mot., Ex. B.). The correspondence contains letters, payment documents, notices, and itemized statements.

The itemized statements issued by DTF are summarized as follows. The total amount of $490,324.89 consists of two accounts, with separate, redacted assessment identification numbers. The "Tax Period Ended" date for both accounts is listed as October 2, 2015. The first account (hereinafter the "Restitution") is itemized as $0.00 in tax amount assessed, $0.00 in interest amount assessed, $39,395.40 in penalty amount assessed, negative $3,270.51 in assessment payments/credits, for a total current balance due of $36,124.89. The second account (hereinafter the "Penalty") is itemized as $0.00 in tax amount assessed, $0.00 in interest amount assessed, $454,200.00 in penalty amount assessed, and negative $0.00 in assessment payments/credits, for a total current balance due of $454,200.00. (Mot., Ex. B.)

In its Opposition, DTF states that Debtor was arrested on October 2, 2015, for possessing 762 cartons of unstamped and untaxed cigarettes. On August 3, 2016, he pled guilty to violating New York State Tax Law ("Tax Law") § 1814(c)(2), a Class D Felony prohibiting the sale of unstamped cigarettes. Attached to the Opposition was a copy of a Restitution Order issued by the Monroe County Supreme Court on October 12, 2016. (the "Restitution Order," Opp., Ex. A). The Restitution Order states that Debtor was ordered to pay DTF restitution in the amount of $39,395.40,

the amount of the unpaid cigarette tax, in addition to five years of probation supervision.

Also attached to the Opposition was a Notice of Determination issued by DTF to Debtor, dated November 10, 2016, which recites the penalties provided by Tax Law § 481 of not more than $600.00 for each 200 cigarettes (one carton) in excess of 1,000 cigarettes (five cartons) of unstamped or illegally stamped packages in the possession of any person. It states that "[o]n 10/02/15, you were found to be in possession of unstamped or unlawfully stamped cigarettes." DTF "assessed the civil penalty rate of $600.00 per carton (in excess of five cartons) because you possessed or controlled 762 cartons of untaxed cigarettes."  This resulted in a total penalty of $454,200.00 for the "tax period ended date" and "file due date" of October 2, 2015. (Opp., Ex. B. (emphasis omitted).)

V.     Discussion

A.  Introduction

DTF's counsel advised the Court at oral argument that this matter was one of first impression within the Second Circuit. Preliminarily, the type of debts at issue are rarely imposed under state law and thus rarely the impetus for a bankruptcy filing. Whether the debts were discharged in the first instance is determinative of whether or not DTF violated the discharge injunction. It is not, however, dispositive of the Motion because the standard for contempt sanctions for an alleged violation of the discharge injunction has been clarified by the Supreme Court in *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019). Thus, the Court must determine whether DTF's debts survived the Discharge Order. If all or a portion of DTF's debts did not survive the Discharge Order, the Court must then determine whether DTF's collection actions amount to contempt under *Taggart*.

B. Dischargeability

"The fundamental purpose of bankruptcy law is to provide a fresh start to the honest but unfortunate debtor." *In re Dogar-Marinesco*, No. 09-35544, 2016 Bankr. LEXIS 4111, at *13 (Bankr. S.D.N.Y. Dec. 1, 2016) (internal quotations and citations omitted). As the bankruptcy court in *In re Dogar-Marinesco* concisely explained, "[t]o that end, the discharge injunction is essential to ensuring that those debtors enjoy a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Id.*

Debtor asserts that the debts due DTF were "discharged pursuant to 11 U.S.C. §507(a)(8)(E)(ii)." However, the cited section enumerates priority debts, not dischargeable debts. "[P]riority does not per se confer or entail nondischargeability; and nondischargeability does not per se confer or entail priority." *In re Bentley*, 266 B.R. 229, 236 (B.A.P. 1st Cir. 2001). The difference between these concepts was succinctly addressed in *In Re Bentley*.

> Priority gives a claim a better right to estate assets… than is enjoyed by other unsecured claims. Nondischargeability, on the other hand, confers no priority as to estate assets; it merely causes a debt to survive the discharge, such that its holder can continue to collect it despite the discharge." *Id.*

As Debtor filed for protection under Chapter 7 of the Bankruptcy Code, prepetition debts are discharged pursuant to § 727, unless an exception applies. Exceptions to the discharge are enumerated in § 523. 11 U.S.C. § 523. While there are many commonalities between § 507 and § 523, the debts enumerated are not identical and the purpose of each section is distinct.

Of relevance here, excepted from the discharge is any debt that is a "a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty … imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition." 11 U.S.C. § 523(a)(7)(B). "A penalty imposed on unpaid taxes accruing more than three years before the filing of the bankruptcy petition is dischargeable." *McKay v. United States*, 957 F.2d 689, 693 (9th Cir. 1992).

Determining whether the Restitution was discharged requires a simple analysis. The Supreme Court in *Kelly v. Robinson* stated that "the federal bankruptcy courts should not invalidate the results of state criminal proceedings. The right to formulate and enforce penal sanctions is an important aspect of the sovereignty retained by the States." *Kelly v. Robinson*, 479 U.S. 36, 47 (1986). "The sentence following a criminal conviction necessarily considers the penal and rehabilitative interests of the State. Those interests are sufficient to place restitution orders within the meaning of § 523(a)(7)." *Id.* at 53. Therefore, the Restitution owed to DTF by Debtor is non-dischargeable, and any attempt by DTF to collect same is not a violation of the discharge injunction.

Determining whether the Penalty was discharged requires a more complex analysis. Debtor alleges the Penalty is an excise tax which was assessed more than three years before the filing of the Petition, making it dischargeable. DTF alleges the Penalty is a tax penalty accessed less than three years before filing of the Petition, making is non-dischargeable. DTF cites *In Re Karim* from the United States Bankruptcy Court for the Northern District of Illinois, interpreting an Illinois statute to support its position. *In Re Karim,* 612 B.R. 904 (Bankr. N.D. Ill. 2020).

Whether a debt owed to a governmental entity is an "excise tax" under the Bankruptcy Code is a matter of federal law. *In re Suburban Motor Freight, Inc. (Suburban II)*, 36 F.3d 484, 487 (6th Cir. 1994). The Bankruptcy Code does not define "excise tax," and federal courts do not rely on state law labels to determine which obligations qualify. Instead, courts exam whether the function of the government exaction is in fact to tax. *See Indus. Comm'n of Ariz. v. Camilli (In re Camilli),* 94 F.3d 1330, 1331 (9th Cir.1996); *see also City of New York v. Feiring*, 313 U.S. 283, 285 (1941).

Courts determining the meaning of "excise tax" as used in the Bankruptcy Code typically resort to dictionary definitions. *See, e.g., In re Lorber Indus. of Calif.*, 564 F.3d 1098, 1101 (9th Cir. 2009); *Bos. Reg'l Med. Ctr., Inc. v. Massachusetts Div. of Health Care Fin. & Policy*, 365 F.3d 51, 57 (1st Cir. 2004) (noting that "the legislative history [is not] informative on what the term means"). The consensus is that "excise tax" as used in § 507(a)(8)(E) refers to a "tax imposed on the

manufacture, sale, or use of goods (such as a cigarette tax), or on an occupation or activity…" TAX, Black's Law Dictionary (11th ed. 2019). *See Boston Reg'l Med. Ctr.*, 365 F.3d at 65; *In re George*, 361 F.3d 1157, 1163 (9th Cir.2004); *In re DeRoche*, 287 F.3d 751, 755 (9th Cir.2002); *In re Groetken*, 843 F.2d 1007, 1013 (7th Cir.1988).

Typically, an excise tax is imposed upon "a discrete act by the person or entity being taxed," *DeRoche*, 287 F.3d at 755, in contrast with, for example, a tax on income, *George*, 361 F.3d at 1163. An excise tax is "indirectly assessed," *In re Suburban Motor Freight, Inc. (Suburban I)*, 998 F.2d 338, 340 n. 3 (6th Cir.1993), and can be any tax "that is not directly imposed upon people or property" but is instead "imposed upon a particular use of property" or upon the exercise of a "right or privilege," *In re Nat'l Steel Corp.*, 321 B.R. 901, 909 (Bankr. N.D. Ill. 2005) (quotation marks and citations omitted).

The State of New York's policy and taxation program concerning cigarettes is described in Tax Law, Chapter 60, Article 20. "It is intended that the ultimate incidence of and liability for the tax shall be upon the consumer, and that any agent or dealer who shall pay the tax to the commissioner shall collect the tax from the purchaser or consumer." N.Y. Tax Law § 471(2) (MicKinney). The goal of placing the responsibility for the cigarette tax on the consumer is to discourage smoking, in order to prevent the morbidity and mortality therefrom, and to raise revenue for the State of New York. Funds raised pursuant to Article 20 are used for a variety of public purposes, including the tobacco control and insurance initiatives pool. N.Y. Tax Law § 482 (McKinney).

Upon the importation of cigarettes into the State of New York, or the manufacture thereof, a registered cigarette tax agent prepays the cigarette tax in the amount of Four Dollars and Thirty-Five Cents and affixes tax stamps to each pack. N.Y. Tax Law § 471 (McKinney). Once stamped, the cigarettes may then enter into commerce, such as by being shipped by the agent to a registered distributor. *Id.* "It shall be presumed that all cigarettes within the state are subject to tax until the

contrary is established, and the burden of proof that any cigarettes are not taxable hereunder shall be upon the person in possession thereof." *Id.* As Debtor did not purchase tax stamps, the Penalty could not be an excise tax pursuant to this provision.

The Tax Law further provides that someone in possession of unstamped cigarettes within New York State for a period exceeding 24 hours is obligated to file a return with DTF and pay a use tax, in an amount equivalent to the cigarette tax. N.Y. Tax Law § 471-c (2) (McKinney). The use tax provided by Tax Law § 471-c is imposed upon a "particular use" of cigarettes, the possession of unstamped cigarettes for a period exceeding 24 hours, and therefore is an excise tax pursuant to the Bankruptcy Code. It is undisputed that Debtor did not file such a return.

Unlike the Illinois statute interpreted in *In Re Karim,* cited by DTF, the New York State statute does not require an evidentiary hearing to determine whether cigarettes violate the Tax Law before said cigarettes are deemed contraband. See N.Y. Tax Law § 1846(a) (McKinney). The cigarette tax is due upon importation or manufacture pursuant to Tax Law § 471, and the use tax return is due within 24 hours of possession within New York State pursuant to Tax Law § 471-c. The Notice of Determination issued by DTF states that the Penalty amount is for the "tax period ended date" and "file due date" of October 2, 2015; the date Debtor was found in possession of the untaxed cigarettes. Therefore, the Penalty is an excise tax penalty assessed due to Debtor's failure to pay the cigarette tax and/or use tax on or about October 2, 2015. As Debtor's Petition was filed May 15, 2019, the Penalty was discharged.

    C. Contempt

A discharge in a bankruptcy case "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [prepetition discharged] debt as a personal liability of the debtor." *Taggart*, 139 S. Ct. at 1801 (quoting 11 U.S.C. § 524(a)(2)). A violation of this discharge injunction is enforced through the court's civil contempt authority under § 105(a). *Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059,

1069 (9th Cir.2002). "These two provisions together "authorize a court to impose civil contempt sanctions when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." *In re DiBattista*, 615 B.R. 31, 38–39 (S.D.N.Y. 2020) (quoting *Taggart*, 139 S. Ct. at 1801).

"[A] court **may** hold a creditor in civil contempt for violating a discharge order if there is no fair ground of doubt as to whether the order barred the creditor's conduct." *Taggart*, 139 S. Ct. at 1799 (emphasis added). In other words, civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful. *Id*. at 1802. "This standard reflects the fact that civil contempt is a severe remedy and that principles of basic fairness require that those enjoined receive explicit notice of what conduct is outlawed before being held in civil contempt." *Id*. (internal quotation marks, citation, and alteration omitted).

While the fair ground of doubt standard is an objective one, a party's subjective intent is also relevant. *Id*. For example, "civil contempt sanctions may be warranted when a party acts in bad faith," and "[o]n the flip side of the coin, a party's good faith, even where it does not bar civil contempt, may help to determine an appropriate sanction." *Id*. The proof of non-compliance must be clear and convincing. *In re 1990's Caterers Ltd.*, 531 B.R. 309, 319 (Bankr. E.D.N.Y. 2015) (citing *United States v. Local 1804-1, Int'l Longshoremen's Ass'n, AFL-CIO*, 44 F.3d 1091, 1096 (2d Cir. 1995)).

D. Application

DTF is not in violation of the discharge injunction for attempting to collect the Restitution, as it is nondischargeable, and therefore cannot be the basis for a finding of contempt. Pursuant to *Taggart,* the Court must consider the threshold question of whether DTF had a fair ground to doubt that the Penalty had been discharged. Debtor proffers the Notice of Discharge received by DTF as evidence that DTF knew the debt was discharged. DTF acknowledges receipt of same, but alleges it had an objectively reasonable basis to believe that the Penalty was not discharged. Debtor presented

no evidence that DTF was informed of Debtor's belief that the debts were discharged until DTF was served with the Motion that is presently before the Court, which alleges the debts are "discharged pursuant to 11 U.S.C. §507(a)(8)(E)(ii)." (Motion).  As discussed above, § 507 provides for priority, not dischargeability of a claim.

The Court notes that Debtor's Petition listed the Restitution and Penalty debts owed to DTF as a single, priority unsecured debt, and Debtor did not seek a determination regarding the dischargeability thereof. Had Debtor listed the debts as nonpriority in his Petition, as he alleges in his Motion, it would have alerted DTF that dischargeability was at issue. Due to Debtor's classification of the debt, as well as the complexity of the dischargeability analysis for tax penalties, there exists no clear and convincing evidence sufficient to support a finding that DTF did not have a fair ground to doubt that the Penalty had been discharged. Therefore, a finding of contempt is not warranted under the facts and circumstances of this case.

[Remainder of Page Intentionally Left Blank]

VI.     Conclusion

For the foregoing reasons, the Court finds that DTF did not violate Debtor's discharge injunction under § 524(a)(2) of the Bankruptcy Code in regard to the Restitution debt. The Court further finds that DTF did violate Debtor's discharge injunction by seeking to collect the Penalty debt, but finds that DTF is not in contempt of the discharge injunction because DTF had an objectively reasonable basis for believing its actions may be lawful under the Discharge Order.

Accordingly, it is hereby

ORDERED, that Debtor's Motion is denied.

It is SO ORDERED.

Dated: December 11, 2020
      Utica, New York

                                            /s/ Diane Davis
                                            DIANE DAVIS